In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-1768

BRINDA ADAMS,

*Plaintiff-Appellant*,

*v.*

WAL-MART STORES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 00-241-C-Y/H—**Richard L. Young**, *Judge.*

ARGUED SEPTEMBER 23, 2002—DECIDED APRIL 7, 2003

Before DIANE P. WOOD, EVANS, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Brinda Adams was fired by her former employer, Sam's Club/Wal-Mart Stores, Inc. (Wal-Mart), for allegedly stealing $12.65 from a co-employee. Believing that the real reason for her discharge was discrimination on the basis of her race (African-American), Adams brought this lawsuit. In addition to her discrimination claim, which she raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, she asserted a claim of false imprisonment under Indiana common law. The latter claim charged that Wal-Mart had violated her rights when company representatives locked

Adams in her manager's office for several minutes while they investigated the charges brought against her. The district court granted Wal-Mart's motion for summary judgment on both theories. We affirm.

**I**

Normally, when both a district court and this court consider a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party. When the non-movant fails to comply with the district court's procedures for handling summary judgment motions, however, the non-movant may as a practical matter lose much of the benefit of that rule. Here, Adams failed to respond specifically to Wal-Mart's statement of material facts, as S.D. Ind. L.R. 56.1 required her to do if she wished to contest those facts. Therefore, as authorized by the rule, the district court treated Adams as having admitted Wal-Mart's version of the material facts. See S.D. Ind. L.R. 56.1(e). We too consider the facts in this light, accepting as true the material facts submitted by Wal-Mart that Adams did not properly contest. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000). Adams should not feel too bad about this, because it also appears that most of the relevant, material facts submitted by Wal-Mart on which the district court relied are not disputed. Moreover, where appropriate, the district court took into consideration Adams's statement of material facts, as do we. *Id.*

Adams began working for Sam's Club, a division of Wal-Mart, in 1986. She was hired as a sales associate for the Evansville, Indiana, store. Throughout the course of her employment, Adams generally received favorable performance reviews. The incident that led to her firing occurred on June 30, 1999. On that day, a co-employee and friend of Adams, Dytana Wilson, reported that some-

one had taken $12.65 from her as the money was lying on a table in the employee lunchroom.

Loss Prevention Supervisor Kevin Dabbs was called in to investigate the incident. Dabbs interviewed each employee who was in the lounge during the time of the theft and collected written statements from Wilson, Sherry Cheatem, and Monica Desjean. Desjean (who is Caucasian) was the only person who claims to have witnessed anything. According to Desjean, Wilson and Cheatem entered the lounge together to eat. Adams was already seated, and as of that time Desjean recalled that there was no money sitting on the table. Wilson then sat next to Adams and placed her food and money on the table. When Wilson got up to take a phone call, Adams cupped the money in the palm of her hand and left the lunchroom. Desjean did not think twice about the incident, because she thought Wilson had noticed, or that Adams would have returned the money to her. Later that day, however, Desjean learned from Wilson that the money was really missing and that Wilson was upset. Desjean reported the incident to one of her supervisors.

In the presence of General Manager Dennis Teal and another member of management, Joyce Young, Dabbs then interviewed Adams. Adams denied that she had taken Wilson's money and claimed that the money she had taken from the table (only a dollar and some change) was hers. Dabbs asked her to submit her side of the story in writing and left her alone in the office to do so. No one told Adams that she was not free to leave. When Adams got up to use the restroom, however, she found that the door was locked. Adams claims that she was locked in the room for three to five minutes before anyone returned, and that Dabbs used a key to open the door. She does not know whether the door could have been unlocked from the inside.

The Wal-Mart Associate Handbook states that "[d]ishonesty in any form will result in immediate termination." Based upon Dabbs's finding, the written statements of Desjean and Wilson, and the interview with Adams, Teal terminated Adams on July 8, 1999, for theft of a co-employee's money.

Adams filed her claim with the EEOC, which issued her a right-to-sue letter on July 27, 2000. On October 23, 2000, Adams filed this action in state court, and Wal-Mart later properly removed it to federal court. The district court granted Wal-Mart's motion for summary judgment, and Adams brought this appeal.

## II

We review the district court's grant of summary judgment *de novo*, examining the facts in the light most favorable to Adams as the non-moving party, and drawing all reasonable inferences in her favor. *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.  Race Discrimination

A claim of race discrimination may be established in one of two ways—under the direct method or the indirect burden-shifting method. See *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997). Under the direct method, the plaintiff must show either through direct or circumstantial evidence that the employer's deci-

sion to take the adverse job action was motivated by an impermissible purpose, such as her race or national origin. See *id.*; *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

Adams admits she has no direct evidence of discriminatory intent, but she believes that she should have a chance to reach a jury based on circumstantial evidence in the record. She finds support for this position in *Troupe,* where this court said that circumstantial evidence of intentional discrimination may consist of "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." 20 F.3d at 737. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action. Otherwise, the plaintiff must proceed by way of the well-known indirect route.

Here Adams's circumstantial evidence consists of the following allegations: Teal (the decisionmaker, who is Caucasian) would walk away from African-American employees mid-conversation, admonish African-American employees to smile more, monitor Adams more closely when an African-American customer was in her checkout line, accept without question facts relayed by a white employee while summarily rejecting the version of facts relayed by African-American employees, threaten to fire African-American employees more frequently than white employees, and not promote African-American employees to supervisory positions. In her view, a trier of fact could find from these snippets that Teal was racially biased and thus that his action in Adams's case was racially motivated.

We think she is trying to push this evidence (such as it is) much too far. The main problem with Adams's "mosaic"

is that there is no solid evidence in the record to support her allegations, as required by FED. R. CIV. P. 56(e). Adams fails to cite specific facts based on her own personal knowledge or the testimony of others. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (disregarding similar unsupported, conclusory allegations); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (racial motives cannot be established by hearsay evidence). Teal's record of disciplining and promoting African-Americans could have been verified by empirical evidence, but it was not. Under the circumstances, we cannot accept Adams's unsupported speculation that the explanation for Teal's conduct in the instances she cites had something to do with racial animus.

Even if a trier of fact were to believe that Teal was personally disinclined to give African-Americans the benefit of the doubt and thus was biased against them, Adams would still not have a triable issue that her termination was motivated by her race. See *Pafford v. Herman*, 148 F.3d 658, 666 (7th Cir. 1998) (finding similar facts insufficient to raise an inference of intentional discrimination). As we have said before, "[B]igotry, *per se*, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Here, there is no specific evidence linking Teal's alleged bigotry to Adams's termination.

That leaves Adams with the familiar burden-shifting paradigm set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under that test, plaintiffs must first establish a *prima facie* case by demonstrating, among other things, that a similarly situated person outside the protected class was treated better. See, *e.g.*, *Bell v. EPA*, 232 F.3d 546, 550 (7th Cir. 2000). In disciplinary situations, we have further interpreted this part of the

test as requiring a showing that two employees dealt with the same supervisor, were subject to the same workplace rules, and engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason. See *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). The district court found that Adams's claim failed because she could not show that any non-African-American employee was found guilty of theft after an investigation and allowed to remain on the job. We agree with this analysis.

Adams argues on appeal that the district court should have recognized the comparability of two other incidents, one involving sexual harassment in which Wal-Mart terminated an African-American employee (Ramey) but not a white employee (Roy), and the other involving a Caucasian employee (Angel) who admitted that she ate another employee's pudding but was not terminated. To begin, these situations strike us as significantly different from outright theft of another person's money. Furthermore, Adams presents no evidence, affidavits, or deposition testimony from Ramey, Roy, or Angel to back up her account of these incidents. Instead, we have only (once again) Adams's conclusory assertions about incidents outside her personal knowledge. *Drake*, 134 F.3d at 887; *Russell,* 51 F.3d at 68. Adams does not allege or show that Teal supervised or made the decision to retain Roy and fire Ramey. Adams also admitted in her deposition that she did not know whether Angel was ever disciplined for her misconduct. For these reasons, we agree with the district court that Adams has failed to show that similarly situated employees outside the protected class were treated more favorably.

It is also plain that Wal-Mart offered a legitimate, non-discriminatory reason for terminating her: theft. See *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir. 1999). It was up to Adams to produce evidence show-

ing that Wal-Mart did not genuinely believe that she had lifted the $12.65. It is not enough for her to show that the investigators might have made a mistake in their conclusion. See *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir. 1999). So long as Teal honestly believed Dabbs's findings and the statements of Desjean and Wilson, Adams's claim cannot survive a motion for summary judgment. See *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997); *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997).

Adams attacks Teal generally but otherwise gives us no reason to disbelieve Wal-Mart's stated reason for terminating her. It was Dabbs, not Teal, who found Adams guilty of theft. Dabbs's findings are supported by written statements from Desjean and Wilson, and Adams does not accuse them of lying or otherwise acting in bad faith. Apart from her unsubstantiated allegations about Teal, there is no evidence that Teal's decision was impermissibly motivated by race, or that the investigation was otherwise tainted.

### B. False Imprisonment

Finally, we turn to Adams's false imprisonment claim. Under Indiana law, false imprisonment is an intentional tort that "consists of an unlawful restraint on one's freedom of movement against [her] will*." Delk v. Bd. of Comm'rs of Delaware County*, 503 N.E.2d 436, 439 (Ind. Ct. App. 1987). As far as we can tell, Indiana courts have never addressed the precise situation presented here, perhaps because the bulk of false imprisonment claims come in the form of wrongful arrest claims against law enforcement officers, where probable cause is the touchstone of the inquiry, or in the shoplifting context, which is governed by the Shoplifting Detention Act, Ind. Code § 35-33-6-2. And while at least one Indiana court has applied the

Shoplifting Detention Act to an employee's claim of false imprisonment against her employer, see *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958 (Ind. Ct. App. 2001), that case arose out of an allegation that the employee had granted an unauthorized discount to a customer and so was more plausibly characterized as a shoplifting incident than the alleged employee-on-employee theft presented here.

In many areas of law, however, Indiana courts follow the Restatement (Second) of Torts, and so we believe that it provides useful guidance to our inquiry. The Restatement provides that the defendant must act "intending to confine the other or a third person within boundaries fixed by the actor." RESTATEMENT (SECOND) OF TORTS § 35. Similarly, where the defendant's actions are unintentional, a claim may not lie for "merely transitory or otherwise harmless confinement." *Id.* Here, we find it notable that the Restatement tracks the Shoplifting Detention Act's requirement that a detention be "reasonable and last only for a reasonable time." Ind. Code § 35-33-6-2(b)(1); see also *Dietz*, 754 N.E.2d at 968 (noting that the Act creates a test of "reasonableness in manner and time").

In this case, Adams alleges that she was locked in an office, which fact we assume to be true, given the posture of the case. *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997). The district court held that a restraint of three to five minutes with no one present in the room was not sufficient to make out a false imprisonment claim. We agree, but not because we think Indiana has a *per se* rule about three-minute confinements. This record shows that the restraint was not merely brief, but also that there is nothing to suggest that Wal-Mart acted with the requisite intent. Even when we interpret the evidence in the light most favorable to Adams, it appears that her several-minute confinement was accidental. No one told Adams that she could not leave, and

Wal-Mart provided a reasonable explanation for having left her alone in the office: so that she could draft her written statement without distraction. On the latter point, we believe that Wal-Mart has carried its burden of establishing justification for the brief detention. See *Grooms v. Fervida*, 396 N.E.2d 405, 412 (Ind. Ct. App. 1979). Without more, Adams cannot establish a claim of false imprisonment under Indiana law.

## III

We conclude that the district court correctly found that Wal-Mart was entitled to summary judgment on both aspects of Adams's case. We therefore AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*