NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 2, 2011
Decided August 8, 2011

**Before**

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 11-1101 | Appeal from the<br>United States District Court for the |
| JIMMY ROBINSON,<br>    *Plaintiff-Appellant*, | Northern District of Indiana,<br>South Bend Division. |
| *v.* | No. 3:07-CV-486 |
| BAYER HEALTHCARE LLC,<br>    *Defendant-Appellee*. | Joseph S. Van Bokkelen,<br>*Judge*. |

## O R D E R

Jimmy Robinson claims that a manager at Bayer HealthCare fired him, and then refused to reinstate him, because he is black. The district court granted summary judgment to Bayer. Robinson challenges that decision, maintaining that he presented sufficient evidence at summary judgment that he was treated less favorably than two similarly situated white employees. We reject this argument and affirm. Robinson's comparators are not suitable, and Bayer had a legitimate nonpretextual reason for firing him when he refused alcohol testing after reporting to work seemingly intoxicated.

The following events are recounted in the light most favorable to Robinson, with relevant disputes noted. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 299-300 (7th Cir. 2011). At the beginning of his shift on the day that he was fired, Robinson, who had worked at

Bayer more than 22 years, had a conversation with Theresa Englebrecht, a human-resources consultant at Bayer, that can most generously be described as strange. He called her over to talk to him, and the first thing he did was ask her "how much" he could say before she fired him. (Robinson maintains that this comment was prompted by the firing of other black employees, who, along with him, had consulted an attorney about discrimination at Bayer.) Robinson then told Englebrecht that he saw her over the weekend and noticed her "short shorts" and red tank top. According to Englebrecht, Robinson stared at her chest while making this comment, behaved oddly, had bloodshot eyes, and reeked of alcohol. Other Bayer employees also noticed Robinson's behavior: They reported that he slurred his speech, and appeared anxious and "more animated than usual."

Robinson denies being drunk. He admits that it was unusual for him to initiate a conversation with Englebrecht, but explains his behavior differently. Before coming to work that day, he says, he took gout medication, which, his doctor reports, can cause drowsiness, confusion, and slurred speech.

After this conversation, Englebrecht returned to her office to contact Robinson's supervisor and review the drug-and-alcohol policy in Robinson's collective-bargaining agreement. According to the agreement, if an employee is reasonably suspected of intoxication, he can be required to give a urine sample; a refusal to do so can lead to termination. If he tests positive, he will be given a chance to enroll in treatment and save his job. While Englebrecht was reviewing the policy, Robinson reported to a daily meeting in which he asked his supervisor for a day off due to lack of work. The supervisor denied the request.

After Robinson returned to work, this supervisor told him that someone had smelled alcohol on him and asked him to "go up front." It is unclear exactly what the supervisor meant by that instruction, but it is undisputed that Robinson did not comply. Instead he clocked out of work, left the building, and sat in his car to "cool off." A coworker came out a few minutes later to tell him that management wanted to test him for drug-and-alcohol use, so Robinson went back inside. Englebrecht and a nurse then asked Robinson to consent to urine and breathalyzer tests. After 40 minutes of discussion (this was Englebrecht's estimate), Robinson agreed to do so. But he returned with an empty cup after about a minute and a half in the bathroom; he claimed he was having trouble urinating.

What happened next is the subject of disagreement. As Robinson tells it, Englebrecht told him, "You can't pee, you're discharged." He says that he replied, "Don't do this," but Englebrecht walked away. (She says she walked away to get his union steward.) Based on this interaction, Robinson believed he'd been fired and began to make his way out of the building. Englebrecht, however, recalls events differently. She says

didn't fire Robinson on the spot, but instead made clear that he could go to a nearby hospital for testing, and the nurse called a taxi to take him there.

Before Robinson made it out of the building, Englebrecht returned with his union steward. Robinson overheard them talking about sending him to a hospital, and the steward urged him to "take the test." Robinson refused to get into the cab to go for off-site testing. Englebrecht says that at this point she fired him for refusing to submit to alcohol testing. Englebrecht then told a nearby police officer to stop Robinson from leaving the parking lot because he was drunk. The officer had Robinson breathe into a device (Robinson claims to be unsure whether it was a breathalyzer). According to the union steward, Robinson blew into a breathalyzer and registered a blood-alcohol content of .24 percent.

At Robinson's request, the union grieved his discharge. During the grievance process, Englebrecht told the union steward that Bayer would not rehire Robinson unless he accepted responsibility for his actions. The union steward said that he encouraged Robinson to admit to a substance-abuse problem (even if he didn't have one) just to get his job back. The grievance led to arbitration, and the arbitrator refused to reinstate Robinson because Robinson "was anything but cooperative" about the drug testing, and he refused to take responsibility for his actions.

Robinson then sued Bayer for discrimination under Title VII, claiming that he was terminated based on his race. In trying to establish a prima facie case under the indirect method, he identified two white employees he claims were treated more favorably after similar incidents involving alleged workplace intoxication. The first was Todd Kucela, who also initially failed to produce a urine sample, but who was given extra time to complete the test after he explained he couldn't urinate and asked for a drink of water. The second comparator, David Ward, also refused to take a drug test and was fired by Englebrecht, but then was rehired on a conditional basis after agreeing to seek counseling. (Ward was eventually fired a second time for refusing to sign paperwork related to ongoing drug testing but again was rehired after consenting to the testing.)

The district court granted Bayer's motion for summary judgment, concluding that Robinson failed to establish a prima facie case of discrimination under the indirect method of proof. In reaching this conclusion, the court found that Ward and Kucela were not similarly situated to Robinson. The court held that Ward was not similarly situated because Englebrecht did not fire or rehire him and he admitted to alcohol abuse and agreed to counseling before he was rehired. And Kucela was an inapt comparator for six reasons: (1) Kucela didn't resist testing; (2) he didn't clock out and leave the building before his test; (3) he didn't have to be asked multiple times to submit to testing; (4) he didn't engage in a

prolonged discussion before going into the bathroom; (5) he wasn't in the bathroom a minute and a half; and (6) he didn't insult Englebrecht. The court added that even if Kucela were similarly situated to Robinson, there was no evidence that Englebrecht's reason for firing him was pretextual because the record supported her belief that Robinson violated the collective-bargaining agreement by refusing to provide a urine sample.

On appeal Robinson reiterates his argument that the evidence raises a reasonable inference that Kucela and Ward were similarly situated and were treated more favorably. He adds that the same evidence also supports his claim that Englebrecht's proffered reason for terminating him is pretextual. He makes no direct attack on the district court's analysis other than to list certain evidence that he claims the court "failed to consider" or "shouldn't have" considered. He does not, however, explain how these alleged errors affect his case.

Under the indirect method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Robinson needed to show, among other things, that Bayer treated him worse than similarly situated white employees. *See Luster v. Ill. Dep't of Corr.*, No. 09-4066, 2011 WL 2857262, at *2 (7th Cir. July 19, 2011). In disciplinary situations, a plaintiff can establish this element by producing evidence "showing that two employees dealt with the same supervisor, were subject to the same workplace rules, and engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003); *see Luster*, 2011 WL 2857262, at *3; *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007).

We note first that there are some errors in the district court's analysis. The court excluded Ward as a comparator because Englebrecht wasn't "part of either his termination or reinstatement decisions," and Ward "readily admitted his offense and agreed to seek alcohol counseling." But Ward testified in his deposition that Englebrecht *was* involved in the decisions to fire and later reinstate him, and that he never admitted to anyone at Bayer that he came to work under the influence of alcohol. In addition, some of the court's multiple reasons for distinguishing Kucela from Robinson are trivial given the flexible and common-sense nature of the "similarly situated" analysis. *See Elkhatib*, 493 F.3d at 831; *Goodwin v. Bd. of Trs. of Univ. of Ill.*, 442 F.3d 611, 619 (7th Cir. 2006). For example, the differing lengths of time the two men spent in the bathroom trying to provide urine samples is irrelevant.

Nonetheless, we agree with the district court that the two comparators were not similarly situated to Robinson and that Bayer had a legitimate nonpretextual reason for treating Robinson differently. Refusing to be tested after being suspected of intoxication is a valid, nondiscriminatory ground for termination. Robinson refused to be tested; Kucela did

not. As the district court noted, although Kucela may have been given more time to take the test, he never refused to cooperate and successfully completed the testing after being given water and some additional time. Robinson, on the other hand, initially left the building—during his shift and without permission—when accused of being intoxicated, then offered no explanation as to why he couldn't complete the test and did not offer to try again. He also said he would not get into the cab to be taken off-site for testing. And even though the district court misunderstood Englebrecht's role in Ward's termination, Ward remains an inapt comparator because like Kucela, he did not refuse testing. Although some evidence suggests that Ward might have refused to take a breathalyzer test before his first termination, Ward has denied that he refused to take the test, and Robinson has accepted that denial. Moreover, the record shows that Ward, unlike Robinson, agreed to seek substance-abuse treatment. That Ward later refused to sign paperwork related to ongoing testing does not make him comparable to Robinson; Ward eventually consented to the testing and on that basis was reinstated.

Even if Robinson had established a prima facie case of discrimination, he failed to show that Englebrecht's reason for firing him—his refusal to submit to alcohol testing—was pretextual. As the district court recognized, the record supports Englebrecht's belief that Robinson was refusing to be tested. His pre-test behavior was erratic: He was confrontational with Englebrecht and asked how much he could say before being fired; he commented on Englebrecht's weekend attire; he ignored his supervisor's instructions and left the building abruptly. In addition, as we have discussed, he gave Englebrecht no explanation for his failure to provide a urine sample and also refused to go for off-site testing. Englebrecht understandably wanted him to take responsibility for this behavior before considering reinstating him. Since Robinson has not pointed to any evidence raising a reasonable inference that Englebrecht's proffered reason for his termination was a lie, his pretext argument fails. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 396-97 (7th Cir. 2010); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478-79 (7th Cir. 2010).

AFFIRMED.