NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 5, 2013[*]
Decided April 11, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-2875

DERRICK DOTSON,
    *Plaintiff-Appellant*,

    *v.*

AT&T SERVICES, INCORPORATED,
    *Defendant-Appellee*.

Appeal from the United States District
Court for the Southern District of Indiana,
Indianapolis Division.

No. 1:10-cv-1175-LJM-DML

Larry J. McKinney,
*Judge*.

**O R D E R**

    AT&T Services fired Derrick Dotson from his job as a truck driver for violating company policy by not timely reporting that he had been arrested for drunk driving. After his termination Dotson sued AT&T under 42 U.S.C. § 1981 and Title VII of the Civil Rights

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Act of 1964, contending that he actually was fired because he is black. He presented evidence of white AT&T employees who had violated reporting rules and had not been fired, but the district court concluded that these employees were not similarly situated to Dotson and granted summary judgment to AT&T. We agree with the district court's assessment and affirm its judgment.

Dotson had been employed by AT&T for 15 years when he was arrested on his day off for operating his personal vehicle while intoxicated. He was taken to jail, and while there a guard loaned him a cell phone, which he used to call his direct supervisor, Donna Earnest. He asked Earnest for permission to take the next two days off of work, and Earnest assented. According to Dotson, he also told her about his arrest, but Earnest denies this, and Dotson concedes that she may not have heard him because he was speaking quietly to avoid attracting attention from other inmates. He also confirms that Earnest said nothing during the call to indicate that she had heard him and never alluded to the arrest in any way after he returned to work. Dotson did not broach the subject upon his return to work either—he was too embarrassed, he explains—though he knew that company policy requires employees to report arrests and traffic citations to their supervisors as soon as they arrive for their next shift. The policy also requires the supervisor who receives such a report to pass it up the chain of command promptly.

For two weeks after his arrest, Dotson continued driving AT&T trucks as usual, but when he received notice that his driver's license had been suspended because of his arrest, he sought out Earnest and informed her. He explained that he expected the charge against him to be reduced to public intoxication at a hearing five days hence, and Earnest agreed to hold off on informing the next-level supervisor until then. She also made sure that Dotson understood he could not drive AT&T vehicles for the time being. Dotson admits that Earnest seemed to be hearing of his arrest for the first time.

When Dotson's court date came, the charge against him was not reduced, and Earnest reported the arrest up the chain of command. The report eventually reached Dave Lawton, the company's Midwest director of supply-chain logistics. Lawton contacted human resources and the labor-relations department, met with Dotson's union, and directed the asset-protection department to open an investigation. Ultimately Lawton decided to fire Dotson for failing to report his drunk-driving arrest in a timely manner, but he did not discipline Earnest for her decision to delay reporting Dotson's arrest for five days.

Dotson's union fought the decision to fire him, and the dispute was brought before an arbitrator. The union argued that Dotson had complied with company policy by reporting his arrest to Earnest when he called her from jail; Lawton defended his decision to

terminate Dotson's employment by pointing out that even if Dotson's story about the phone call were believed, he admittedly was unsure whether Earnest actually heard and understood him. Lawton also said that he considered Dotson's delay in reporting his drunk-driving arrest to be especially egregious because his job was that of a driver, and he continued driving after the arrest. Lawton explained that whenever one of his employees is charged with drunk driving—even if the employee's license has not yet been suspended—he prohibits that person from driving company vehicles, pending resolution of the case, because putting a potentially hazardous driver on the road could lead to accidents and liability for the company. When asked whether AT&T has a policy to that effect, he replied, "I don't know if it's a company position, but it's a position that I take in my organization, I don't allow them to drive." The arbitrator found that AT&T was justified in firing Dotson for delaying the report of his arrest.

Dotson then sued AT&T under Title VII and § 1981, claiming that he was fired because of his race. He proceeded using the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Normally, to make out a prima facie case under *McDonnell Douglas*, a plaintiff must present evidence that (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) a similarly situated employee outside of his protected class was treated more favorably. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). That achieved, the burden shifts to the defendant to provide a nondiscriminatory reason for the adverse employment action and then back to the plaintiff to show that the proffered reason is pretextual. *See Everroad*, 604 F.3d at 477. But when, as here, the plaintiff satisfies the first and third *McDonnell Douglas* elements, and the employer argues that the plaintiff was fired for not meeting legitimate expectations, pretext becomes relevant to the prima facie case as well. *See id.* at 477–78; *Elkhatib v. Dunkin Donuts*, 493 F.3d 827 (7th Cir. 2007); *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001). Additionally, evidence of similarly situated employees who were treated more favorably than the plaintiff can be offered to show that the company's proffered reason for the adverse employment action is pretextual. *Everroad*, 604 F.3d at 477–78.

Dotson identified several white employees, including Earnest, as comparators. AT&T countered that these employees were not similarly situated to Dotson: He alone failed to report a drunk-driving arrest while continuing to drive AT&T vehicles. The district court, concluding that Dotson's evidence did not show that the company's explanation for his termination was pretextual, granted summary judgment to AT&T.

On appeal Dotson maintains that the employees he identified are similarly situated to him in all material respects. The comparators he proposes are Earnest, who delayed

reporting Dotson's own arrest; Ed Brewer, a driver who reported that his commercial driver's license had been suspended nearly a year after the suspension began; Gwen Hochstetler, a supervisor who delayed reporting the drunk-driving arrest of a nondriver-employee named Kim Kimbrell; Kimbrell himself, who may not have reported his arrest to Hochstetler in a timely manner; and Jack Simon, a driver who was arrested for driving under the influence. Dotson argues that AT&T's more favorable treatment of these white employees—none was fired—is evidence that Lawton gave a false reason for firing him.

But we agree with the district court that these employees are not similarly situated to Dotson. Although "a plaintiff need not present a doppelganger who differs only by having remained in the employer's good graces," the proposed comparator must be similar enough to the plaintiff to allow for a meaningful comparison. *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008). A comparator's job description, conduct, and supervisor are generally relevant. *See id.*; *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012). Earnest is not a suitable comparator because, unlike Dotson, she was not arrested, and Lawton believed her that she didn't know about Dotson's arrest while he was still driving. Hochstetler and Kimbrell are unsuitable because although they both delayed reporting Kimbrell's drunk-driving arrest, Kimbrell did not work for AT&T as a driver. And Brewer, although he was a driver, is not similarly situated to Dotson because he was not arrested nor accused of drunk driving and was found to have reported a correctable problem with his commercial driver's license as soon as he learned of it. Finally, Simon, who was a driver and was arrested for drunk driving, is not a suitable comparator because he complied with company policy by reporting his arrest immediately upon returning to work, and, in any event, Simon did not work under Lawton. A jury could not conclude from AT&T's treatment of these employees that the reason Lawton gave for Dotson's termination was pretextual.

Dotson mentions that Simon seems to have been allowed to continue driving after he was arrested (until his license was formally suspended), and this fact, he implies, is evidence that Lawton was lying when he testified that Dotson's reporting violation was exacerbated by his decision to continue driving after his arrest. But Lawton testified that he was not Simon's boss and was unfamiliar with any situation concerning him, and Dotson has not presented any evidence to the contrary.

We conclude that summary judgment was properly granted to the defendant.

AFFIRMED.