NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 25, 2013[*]
Decided July 12, 2013

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 12-3626 & 12-3813

| | |
|---|---|
| VALENTINO GRAHAM, *Plaintiff-Appellant,* | Appeals from the United States District Court for the Central District of Illinois. |
| *v.* | No. 11-CV-1101 |
| ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, *Defendant-Appellee.* | James E. Shadid, *Chief Judge.* |

**O R D E R**

Valentino Graham had been a child welfare specialist with the Illinois Department of Children and Family Services (DCFS) for three years when he was fired in 2009 for falsely testifying at a child welfare hearing and mishandling confidential client materials. Graham then sued his former employer under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, contending that the real reason he was fired is that he is black. The district court

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

entered summary judgment for DCFS after concluding that Graham had provided neither direct nor indirect evidence of race discrimination. We agree with the district court's assessment and affirm its judgment.

One of Graham's job duties as a child welfare specialist was to testify at child welfare hearings. In March 2009 he testified twice about his role in permitting a father to have an unsupervised visit with his daughter in violation of an order of protection. As the hearing transcripts establish, Graham testified at the first hearing that he had given permission for the visit, while at the second, after some equivocating, he denied giving this permission.

Cathy Smith, one of Graham's supervisors, heard about his inconsistent statements and contacted the assistant state's attorney who had examined him at the hearings to ask what had happened. The assistant state's attorney responded with a letter accusing Graham of testifying falsely and evasively. She wrote that she had "observed Mr. Graham lying in a court proceeding" and that he was "completely lacking in courtroom decorum." She added that she would "never call Mr. Graham as a witness again" and in fact had already canceled his scheduled testimony in another case.

The receipt of the attorney's letter prompted Smith to investigate whether Graham was performing his other job responsibilities satisfactorily. A search of his office uncovered unsecured confidential client materials and release forms that were blank except for client signatures that apparently had been copied from other forms. Graham was accused of breaching confidentiality and giving false testimony, and though he denied intentionally doing either, DCFS's director ultimately decided to fire him on those grounds. Graham explains that his firing was not the first time he was treated poorly at work: During an argument between him and a former supervisor in 2007, the supervisor threatened to call the police if Graham did not "back off," and afterward another supervisor explained to Graham that his large size and shaved head could be intimidating.

In response to his firing Graham sued DCFS under Title VII and § 1981, contending that his race motivated the agency's action. He argued that circumstantial evidence supports his claim of race discrimination, pointing specifically to the incident in 2007 when he was warned to "back off." Graham also sought to make out a prima facie case of race discrimination using the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To that end, he contended that similarly situated, white employees had made "mistakes" while testifying but had not been fired. Additionally, Graham claimed that his firing was retaliation for an earlier lawsuit.

The district court granted DCFS's motion for summary judgment after concluding that Graham had failed to present evidence from which a jury could find that he was fired because

of his race. The court explained that nothing indicated that the 2007 incident Graham described had anything to do with his race or any bearing on the decision in 2009 to fire him. The court also concluded that none of the employees Graham put forward as comparators had been accused of lying in court, breaking confidentiality rules, or doing anything comparable, meaning that they were not situated similarly to him. (The court entered summary judgment for DCFS on the retaliation claim as well, and Graham does not challenge that ruling on appeal.)

Graham concedes that he is unable to present direct evidence of race discrimination, but he argues that he offered evidence to support a prima facie case under *McDonnell Douglas*. Again he contends that white employees working for DCFS made unspecified "mistakes" while testifying at child welfare hearings but were not fired.

The *McDonnell Douglas* approach ordinarily requires the plaintiff to present evidence that (1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) a similarly situated employee outside of the protected class was treated more favorably. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). If those elements are shown, the burden shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. If the employer does so, the burden of proof shifts back to the plaintiff to show that the stated reason is pretextual. *See Everroad*, 604 F.3d at 477. But when, as in Graham's case, the plaintiff satisfies the first and third *McDonnell Douglas* elements, and the employer argues that the plaintiff was fired because he did not meet legitimate expectations, "the credibility of the employer's assertion is at issue for both the second element of the plaintiff's prima facie case and the pretext analysis." *Id.* at 477–78; *Elkhatib v. Dunkin Donuts*, 493 F.3d 827, 831 (7th Cir. 2007); *Curry v. Menard*, 270 F.3d 473, 477–78 (7th Cir. 2001).

One way for Graham to show pretext and thus defeat a motion for summary judgment was to present evidence of similarly situated employees who were treated more favorably than he. *Everroad*, 604 F.3d at 477–78. A plaintiff need not "present a doppelganger who differs only by having remained in the employer's good graces," but a comparator, to be suitable, must resemble the plaintiff enough to allow for a meaningful comparison. *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008). The seriousness of the proposed comparator's misconduct is of course relevant. *See Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012); *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008).

Graham's evidence of similarly situated employees who were treated more favorably falls far short of supporting a reasonable inference that DCFS's stated reasons for firing him

were pretextual. He has offered nothing more than his statement that these employees made "mistakes" while testifying yet were not fired. This vague and unsupported assertion is not evidence that any of his proposed comparators engaged in misconduct comparably serious to his. And although Graham repeatedly points to the assistant state's attorney's letter about his false testimony, apparently believing that the letter somehow satisfies his burden under *McDonnell Douglas*, his understanding of its significance is mistaken. The attorney's letter did not identify any other DCFS employee who falsely testified and could serve as a comparator. To the contrary, the letter — which assessed Graham as unfit for his duty of testifying at child welfare hearings — is further justification for DCFS's decision to treat him differently than employees about whom no such letter was written.

Because Graham has presented no evidence from which a rational jury could find that his firing was racially motivated, we conclude that the district court's entry of summary judgment was proper.

**AFFIRMED**.