NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 13, 2012[*]
Decided June 19, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3335

| | |
|---|---|
| BERNICE SMITH, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> KATHLEEN SEBELIUS, <br> Secretary, U.S. Department of Health <br> and Human Services, <br>     *Defendant-Appellee*. | Appeal from the United States District <br> Court for the Northern District of Illinois, <br> Eastern Division. <br><br> No. 09 C 7280 <br><br> Matthew F. Kennelly, <br> *Judge.* |

**O R D E R**

Bernice Smith filed suit under Title VII of the Civil Rights Act of 1964 against her employer, the Department of Health and Human Services. She claimed that a supervisor

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

discriminated against her based on her race and sex by suspending her for two days and that another supervisor retaliated against her for filing complaints with the Equal Employment Opportunity Commission by holding her to an unrealistic performance standard. The district court granted summary judgment for the Secretary. Because Smith has failed to establish a *prima facie* case of discrimination or retaliation, we affirm the judgment of the district court.

**I**

Smith, an African-American woman, was working as an administrative officer for HHS when she received a letter from her first-line supervisor, David Krupnick, proposing to suspend her for three days without pay. His reason for the proposed suspension related to Smith's work schedule. In a recent 2-month period, he asserted, Smith had left work more than 40 minutes early on 18 occasions and arrived more than 10 minutes late on 17 other occasions. Krupnick described this as an egregious violation of the attendance policy, as well as of his trust, particularly because many of the violations occurred while he was out of the office. He also reminded her of a meeting where he brought his attendance concerns to her attention. At the meeting he had confronted her with pass-card records documenting her late arrivals and early departures, and she had said she "could not recall" whether she arrived late or left early on those days. Krupnick's letter ended with an explanation of Smith's right to respond to these allegations before a final decision would be made by Martin Campbell, an assistant inspector general for HHS in Washington, D.C.

Smith responded by asserting that the pass-card records might not accurately reflect her attendance because employees could enter the office without swiping their cards (if they walked in with another employee who had swiped) and could also leave without swiping (by pushing an emergency-release button). Campbell was unmoved. He concluded that she should be suspended because, in his view, the evidence indicated that Smith had been absent as charged: the pass-card records showed that she frequently entered the office late and left early, and she had offered nothing to show that she actually had been working when she was apparently absent. Campbell rejected Smith's contention that the records of her pass-card swipes might not accurately reflect her comings and goings. The ability to enter and exit without swiping a card was irrelevant in her case, he explained, because the records showed that she had swiped her card daily, and it was highly implausible that she had done so when she was not in fact leaving or arriving. Campbell did, however, set Smith's suspension at two days rather than three because she had "no prior disciplinary actions" and had otherwise been "a good performer." Smith then filed an EEO complaint alleging that Krupnick's proposal to suspend her was motivated by racism and sexism.

More than a year after Smith's suspension (but before a final decision on her EEO

complaint had been made), it was announced that her position was being phased out. (Smith does not allege that the phase-out was in any way discriminatory.) She was encouraged to apply for an investigations analyst position in the same office, was hired, and began working in that position in early 2006.

Smith's new first-line supervisor was Scott Vantrease, a person she already knew. Two years earlier Vantrease had asked her to sit in on a disciplinary meeting involving an employee who was also an African-American woman, and Smith had refused because she regarded this as another (white) employee's responsibility and she believed that she was being asked to serve because of her race. According to Smith, Vantrease was unhappy with her refusal. She traces the deterioration of her previously good relationship with Krupnick to this incident, believing that Vantrease turned Krupnick against her by alerting him to her pass-card records—records Vantrease could access, says Smith, because he was involved with office security.

About three months after Smith started working under Vantrease, he assessed her performance. In a written report he described her productivity as very low and noted that she had been late to work or left early without permission on at least four occasions. He warned her that failure to improve productivity could result in her being placed on a "performance improvement plan." According to Smith, Vantrease told her in person that if she did not improve by September, he would recommend termination. He also made it clear that going forward, she would be required to swipe her pass card whenever she entered or left the office.

In mid-2006, a few weeks after this assessment, Smith filed an EEO complaint alleging that Vantrease—by requiring her to do an unreasonable amount of work, excessively scrutinizing her work, threatening a performance-improvement plan, and requiring her to swipe her pass card—was discriminating against her because of her race and sex and retaliating against her for her EEO complaint the previous year. Days after she filed her complaint, Vantrease informed her in a letter that he was proposing to suspend her for five days for violating the attendance policy. He accused her of having been late for work on more than a dozen occasions over a three-month period without informing anyone or requesting leave. Campbell again agreed that a suspension was appropriate, but he decided it should be for three days rather than five, explaining that in four instances Smith had been tardy by less than seven minutes. Smith supplemented her EEO complaint with a claim that this suspension was also discriminatory and retaliatory.

HHS consolidated Smith's two EEO complaints, investigated, and concluded that she had not been subjected to discrimination or retaliation. Smith appealed to the EEOC but her appeal was denied. She then sued the Secretary of HHS, making the same points.

After the close of discovery, the district court granted the Secretary's motion for summary judgment. The court said that Smith had failed to make out a *prima facie* case of discrimination: she had no evidence indicating that she was meeting her employer's legitimate expectations, nor had she identified a similarly situated employee outside her protected class who had been treated more favorably than she was. The court also rejected her retaliation claim for failure to make out a *prima facie* case. Again, she pointed to no evidence showing that she met HHS's expectations; the actions of which she complained were not sufficiently adverse; and she failed to identify a similarly situated employee for comparison.

## II

Smith's brief on appeal is cursory, lacks citations to the record and legal authority, and falls far short of showing that the district court was wrong to conclude that she failed to make out a *prima facie* case of discrimination or retaliation. Even if the brief had been better, however, the law and the evidence (viewed in the light most favorable to Smith of course) are not on her side.

Smith first argues that the district court should have found that she established a *prima facie* case of race and sex discrimination in connection with her first suspension, the one initiated by Krupnick. (She no longer contends that any other actions were instances of race or sex discrimination.) Under the "indirect method" of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), she needed to show that she (1) is a member of a protected class, (2) met her employer's legitimate job expectations, (3) suffered an adverse employment action, and (4) that similarly situated employees outside of her protected class were treated more favorably. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012); *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010).

According to Smith, the district court's conclusion that she failed on the second element—meeting legitimate expectations—was wrong because it was based on her pass-card records. She once again contends that the pass-card records are not good evidence of her attendance, this time pointing to the district court's assertion that Campbell imposed a two-day suspension (rather than the three-day suspension proposed by Krupnick) because "it was theoretically possible for an employee to enter or leave the work place without swiping her security card when another employee had opened the door." Smith sees this as an acknowledgment by the court that the pass-card records are unreliable.

We agree with the district court that Smith failed to present enough evidence to permit a rational trier of fact to find that she was meeting her employer's legitimate

expectations. She submitted nothing to substantiate that she was in fact working during the times her pass-card records indicate she was out of the office (emails would have been one way). Nor has she ever said, let alone proposed to prove, that she was in the habit of leaving the office early and swiping her card on the way out, re-entering soon thereafter on someone else's swipe, and then leaving at her designated time without swiping. (And incidentally, the district court's statement about why Campbell suspended her for only two days was inaccurate: Campbell was explicit in his letter to Smith that he choose two days rather than three because she had no prior disciplinary problems, not because he thought that she might actually have been at work when she was accused of being absent.)

Smith also makes a feeble attempt to challenge the district court's rejection of her claim for failure to provide evidence of a similarly situated, and more favorably treated, person outside her protected class. The problem, Smith now says, is that she was unable to provide such evidence because her managers refused to supply her with other employees' pass-card records when she asked for them. But this argument in no way excuses her failure to submit evidence supporting this element. She could have sought the other employees' pass-card records during discovery but seemingly did not.

When a plaintiff has failed to establish any one element of a *prima facie* discrimination case, summary judgment is appropriate. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007). Smith has failed to establish two. Thus there is no need to reach the issue of pretext, see *Everroad*, 604 F.3d at 477, which in any case Smith does not mention in her brief.

Smith also contends that the district court erred by entering summary judgment in favor of the Secretary on her retaliation claim. To make out a *prima facie* case of retaliation using the indirect method, she needed to present evidence that she (1) engaged in statutorily protected activity, (2) met her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006). Before this court, Smith focuses her retaliation argument on three actions taken by Vantrease: he gave her too much work, excessively scrutinized her work, and threatened her with a performance improvement plan.

Such actions generally do not constitute adverse actions of the type likely to dissuade protected activity, see *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011); *Cole v. Illinois*, 562 F.3d 812 816–17 (7th Cir. 2009), and Smith offers no reason to believe that her case is extraordinary. And even if Vantrease's actions were sufficiently adverse, Smith concedes that she has failed on another element: she cannot identify a similarly situated employee

who did not engage in protected activity and was treated more favorably. "There simply were no similarly-situated employees for comparison purposes," she explains, but she cites no authority suggesting that her claim is salvageable under these circumstances, and we have found none. As in a discrimination claim, summary judgment for the defendant on a retaliation claim is appropriate when the plaintiff fails to meet any one element of the *prima facie* case, and so summary judgment was appropriate here.

The judgment of the district court is **AFFIRMED**.