In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-4066

MILTON LUSTER,

*Plaintiff-Appellant*,

*v.*

ILLINOIS DEPARTMENT OF CORRECTIONS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:08-cv-1114-MMM-JAG—**Michael M. Mihm**, *Judge.*

ARGUED NOVEMBER 9, 2010—DECIDED JULY 19, 2011

Before POSNER, TINDER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Milton Luster claims that the Illinois Department of Corrections violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), by firing him from his job as a correctional lieutenant because he is black. The warden at the prison where Luster worked had suspended him "pending discharge" and recommended his termination after concluding that Luster had sexually harassed a female subordinate.

An independent state agency responsible for hiring and firing unionized employees then had 30 days to act on the recommendation to terminate. During that 30-day window Luster could have objected to the proposed termination. Instead he resigned and then filed suit.

Luster has no direct evidence of race discrimination and relies instead on the indirect method of proving unlawful discrimination. The district court granted summary judgment for the IDOC, finding that Luster had established a prima facie case of discrimination but had not shown that the IDOC's stated reasons for its decision — the harassment, which included a battery, and lying about the misconduct to IDOC officials — were pretextual. On appeal Luster challenges the latter conclusion. The IDOC renews its contention that Luster's evidence was not actually sufficient to establish a prima facie case of discrimination, and it defends the district court's conclusion on lack of pretext. We agree with the IDOC on both points and affirm the judgment in favor of the IDOC.

I. *Facts for Summary Judgment*

Because the district court granted summary judgment, we consider the following facts as either undisputed or reflecting the evidence in the light reasonably most favorable to Luster, the non-moving party. See *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010). Luster began working for the IDOC as a guard in 1988. He was promoted several times and in 2001 was assigned to the Dwight Correctional Center as a lieutenant.

The dispute stems from seemingly trivial events on June 6, 2006, when Luster and a few of his co-workers were discussing the origin of prunes. The conversation became heated when Luster contended that prunes are dried grapes while Christine Cole, a white guard, insisted that dried grapes are raisins, not prunes. Luster (foolishly) proposed that they "wager on this one," prompting Cole to reply, "Then get your check out bitch cuz you lost."

Later that day, Luster submitted an incident report accusing Cole of being insubordinate for calling him a "bitch." Two days later Cole reported to her superiors that on June 1, 2006, Luster had forcibly pinned her against a wall in the control room while both were on duty and put his mouth on her neck forcefully enough to leave red marks. Luster had done the same thing a week earlier, she reported, and also had touched her buttocks a few days after the June 1st incident. Cole, who acknowledged having had an affair with Luster four years earlier, also reported that he had made suggestive remarks to her in person at work, on the telephone in unsolicited calls to her home, and in person at her home when he showed up uninvited. She had told him to stop, she said, but he had persisted.

Cole's allegations triggered an investigation within the IDOC. Warden Mary Sigler placed Luster on paid administrative leave on June 11th. During the remainder of June the matter was investigated by Larry Sims, who worked in the IDOC investigations unit. Sims reviewed incident reports and interviewed Luster, Cole, and two

other guards, one male and one female, who said they had witnessed at least one incident like the one Cole said occurred on June 1st. Luster was interviewed twice. He denied all of Cole's allegations.

In his final report to IDOC management, investigator Sims criticized Cole for calling Luster a "bitch" and for waiting to report his harassment, but he credited her account of the June 1st encounter and disbelieved Luster's denials. Sims' investigation prompted a criminal referral to the State's Attorney for battery, as well as disciplinary proceedings. Luster and his union representative appeared before an IDOC hearing officer on August 1st. On August 15th, the hearing officer recommended to Warden Sigler that Luster be fired.

Warden Sigler agreed. She suspended Luster without pay beginning August 31st and recommended to the Illinois Department of Central Management Services that he be fired. That department must approve the termination of unionized prison employees, see 80 Ill. Admin. Code §§ 302.710, 302.720; *Jennings v. Illinois Dep't of Corrections*, 496 F.3d 764, 768 (7th Cir. 2007). Central Management Services acted on the warden's recommendation by issuing an "action form" dated September 7, 2006 informing Luster that he was suspended effective August 31st "pending discharge." Luster was given a provisional termination date of September 30th, but he could have tried to save his job by filing a grievance before then. If those avenues failed, he could have filed an administrative appeal to the state Civil Service Commission. See 80 Ill.

Admin. Code § 302.750. Instead, on September 8, 2006, he delivered a resignation letter to the warden.[1]

## II. *The Prima Facie Case of Discrimination*

We consider first whether Luster offered evidence of a prima facie case of discrimination. The IDOC moved for summary judgment, arguing that Luster had no evidence that would allow a reasonable jury to find that he was disciplined because of his race. In opposing the motion, Luster relied on the indirect method of proof pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). It was his initial burden to establish a prima facie case of discrimination by offering evidence tending to show that (1) he is a member of a protected class, (2) he was meeting the IDOC's performance expectations, (3) he suffered an adverse employment action, and (4) a similarly situated co-worker who is not a member of the protected class was treated more favorably. See *Winsley v. Cook County*, 563 F.3d 598, 604 (7th

---

[1] Luster's letter is dated September 6th but was stamped "received" by the warden's office on September 8th. At his deposition Luster insisted that he never received the September 7th notice of his suspension "pending discharge." He acknowledged receiving a written communication that he characterized as a "30-day termination" letter, also effective August 31, 2006, but he claimed to have thrown that document in the trash and could not produce it. He acknowledged understanding, however, that the personnel action could be contested during the 30-day window.

Cir. 2009); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

The first element is satisfied, and although the IDOC maintains that Luster was never fired because he resigned, the IDOC concedes that Luster's suspension without pay before he resigned was an adverse employment action sufficient to satisfy the third element for purposes of summary judgment.

With respect to the remaining elements of the prima facie case, the district court correctly reasoned in this case of allegedly discriminatory discipline that the second element, whether the employee was performing satisfactorily, merged into the fourth element, whether the employer treated plaintiff worse than a similarly situated co-worker. See *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008); *Flores v. Preferred Technical Grp.*, 182 F.3d 512, 515 (7th Cir. 1999). Federal employment discrimination laws do not limit their protection to perfect or even good employees. They also protect employees who misbehave or perform poorly. *E.g., Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) ("perfection is not a requirement for protection under Title VII"). Under Title VII of the Civil Rights Act of 1964, an employer cannot intentionally discipline poor employees more severely on the basis of race, sex, religion, or national origin.

A plaintiff trying to meet this element by showing that comparators outside the protected group were "similarly situated" need not demonstrate complete

identity. What is required is "substantial similarity" given all relevant factors in the case. See *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Courts should apply a flexible and factual, common-sense approach. *Id.* The question is whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis. For claims of discriminatory discipline, courts compare the similarity of misconduct, performance standards, qualifications, and disciplining supervisor. See *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

As the case is framed for us on appeal, Luster's prima facie case turns on whether he established that one or more co-workers of other races who engaged in physical misconduct of a sexual nature were given lighter punishment than the 30-day suspension pending discharge that he received from the IDOC. On appeal, Luster relies on two comparators: Kinsella and Kozlowski, both white guards.

The district court concluded that there is a disputed issue of material fact in the comparison to Kinsella. In answering an interrogatory, Luster said that Kinsella had been "accused" of having sex with an inmate but was punished with only a brief suspension. Warden Sigler countered in an affidavit that Kinsella had never been accused of having sex with an inmate, that the accusation had been "socializing" with an inmate, and that she had concluded that even the "socializing" accusation

was unsubstantiated. The district court reasoned that these differing accounts created a material factual dispute that had to be resolved by a jury.

We disagree. A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010). In answering the interrogatory, Luster did not claim to know what Kinsella had actually done; he simply stated that Kinsella had been accused of having sex with an inmate. Moreover, Luster's answer to the interrogatory does not supply an admissible foundation from which to conclude that he even possessed personal knowledge about the nature of the accusation. In contrast, Warden Sigler herself reviewed and decided the merits of the accusation against Kinsella. She thus had personal knowledge of the "socializing" charge and of her own finding that the accusation was unsubstantiated. The evidence supplied by Warden Sigler is admissible. See *Thanongsinh v. Board of Education*, 462 F.3d 762, 777 (7th Cir. 2006); *Kaba v. Stepp*, 458 F.3d 678, 682 (7th Cir. 2006). Without admissible evidence from Luster to counter her affidavit, there was no genuine dispute as to whether Kinsella was an appropriate comparator.[2]

---

[2] Luster's answer to the interrogatory was proper as a discovery response. A party answering an interrogatory must provide

(continued...)

We agree with the district court that Luster's other proposed comparator, Kozlowski, does not present a genuine issue of fact to help him establish a prima facie case because Kozlowski was not treated more favorably. Like Luster, Kozlowski physically harassed a female co-worker, and the warden found the accusation to be substantiated. To that extent, Luster and Kozlowski were similarly situated. Yet as she did with Luster, Warden Sigler suspended Kozlowski for 30 days "pending discharge." Up to that point, both men were treated identically, but the fourth prong of the prima facie case requires that a similarly situated employee be treated more favorably. See *Bio v. Federal Express Corp.*, 424 F.3d 593, 597-98 (7th Cir. 2005); *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 731-32 (7th Cir. 2004).

The fact that Kozlowski ultimately remained employed with the IDOC does not distinguish him as being treated more favorably. Rather, Kozlowski's continued employment reflects that both he and Luster received

---

[2] (...continued)

the non-privileged, responsive information he has, whether or not he has personal knowledge or admissible evidence of the matter. But a party cannot use his own interrogatory answer, which is almost certainly hearsay when offered by that party himself to prove the truth of its contents, to support or oppose summary judgment. Rule 56(c)(4) requires that affidavits and declarations to support or oppose summary judgment must be made on personal knowledge. *E.g.*, *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (applying earlier version of Rule 56).

the same 30-day window to challenge their proposed terminations while Central Management Services evaluated the warden's recommendation to fire them. Kozlowski used the time to file a successful grievance. Luster did not try. Instead he resigned immediately and then filed this lawsuit. The IDOC is not legally responsible for that difference.

Luster also contends that he did not receive a 30-day suspension "pending discharge," but instead received a more severe 30-day "termination" letter dated August 31st. We overlook Luster's difficulty in proving the existence and content of this alternate letter. His characterization of the letter yields the same result. As Luster conceded at his deposition, the letter he received—whatever the label given to it — gave him 30 days to challenge the discipline by filing a grievance. Kozlowski got nothing better. Also, Luster treated his supposed immediate termination as a suspension. At his deposition he sometimes referred to the action as a "30-day suspension." And the fact that he tendered his resignation on September 8th is a powerful indication that Luster did not think he had been fired. Because Luster failed to come forward with evidence that the IDOC treated him worse than it treated any similarly situated white employees, he failed to offer a prima facie case of race discrimination.

## III. *Pretext*

The lack of a prima facie case doomed Luster's Title VII claim, but even if it did not, the IDOC was still entitled to summary judgment because it provided a legitimate,

non-discriminatory reason for its adverse employment action: Luster was suspended pending termination for sexually harassing a coworker and then lying about his misconduct. To defeat the IDOC's motion for summary judgment, it was Luster's burden to present evidence sufficient to allow a reasonable jury to find that this reason was false (pretextual), from which a trier of fact could infer that the real reason was unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007). The district court found that Luster had failed to do so, and we agree with that conclusion.

In arguing otherwise, Luster quotes *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999), for the proposition that a plaintiff may prove pretext by offering "evidence of at least an inference" that discrimination was the real reason for the employer's action. Luster identifies several supposed flaws in the IDOC's investigation of battery committed against Cole. These flaws, he says, support an inference of discriminatory intent. According to Luster, IDOC investigator Sims admitted that he "found some of the testimony given by one of the witnesses to be 'suspicious.'" Sims did not check the employee log (to verify Luster's presence on the day Cole was assaulted), nor did he examine the layout of the room where the assault occurred (to verify that the incident could have happened as Cole described). Luster also contends the investigation was rigged against him because Warden Sigler chose the hearing officer and told the selected official what discipline to impose. In support, Luster points out that the assistant

warden testified that, contrary to protocol, she did not receive Cole's incident report before it reached Warden Sigler. He also asserts that before the hearing, a superintendent stated that they were going to "get" Luster and that a union representative called his termination a "done deal."

These supposed flaws are not sufficient to support a reasonable inference that the IDOC lied about its reasons for suspending Luster pending termination. With regard to Sims' investigation, another eyewitness confirmed the June 1st incident with Cole. And while Sims did not review the logbook to verify that Luster was on duty at the time of the incident, Luster looked at the logbook himself and conceded that he was on duty for at least part of June 1st. In any event, whether the June 1st incident occurred exactly as described by Cole does not affect the outcome here. After a reasonable, if not perfect, investigation, the warden believed Cole's allegations. On that factual basis, the IDOC suspended Luster. See *Jackson*, 176 F.3d at 985 (in evaluating pretext: "An employer's honest belief, whether or not it is mistakenly held, is the issue relevant to these situations."). With regard to the hearing process being suspect, Luster's counsel at oral argument conceded that the evidence of the reported comments about a "done deal" and "getting" Luster was inadmissible hearsay. Without admissible evidence of pretext, the district court correctly granted summary judgment for the IDOC.

IV. *Conclusion*

We affirm the grant of summary judgment for the IDOC, but a final observation is in order. In his appellate brief and at oral argument, counsel for Luster noted that direct evidence of discriminatory intent is difficult to obtain. Few employers today openly admit to engaging in discriminatory practices. Thus, counsel reminds us, the vast majority of employment-discrimination claims will rest on circumstantial evidence. See *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1113 (7th Cir. 1992); Joshua L. Weiner et al., *Disparate Impact and Disparate Treatment/Legal Update and Practical Guide*, 776 PLI/LIT 475, 477 (2008); Eddie Kirtley, *Where's Einstein When You Need Him? Assessing the Role of Relative Qualifications in a Plaintiff's Case of Failure-to-Promote Under Title VII*, 60 U. Miami L. Rev. 365, 366 (2006).

Counsel suggests that the *McDonnell Douglas* burden-shifting framework, developed to address situations where there is no smoking gun, is too inflexible and burdensome for plaintiffs. Some commentators agree; the academic literature is rife with critiques of *McDonnell Douglas*, as the framework can produce both false negative and false positive results. See Katherine T. Bartlett, *Making Good on Good Intentions: The Critical Role of Motivation in Reducing Implicit Workplace Discrimination*, 95 Va. L. Rev. 1893, 1926-30, 1956-60 (2009) (reviewing and critiquing proposals to revise burden-shifting framework by easing plaintiff's burden at summary judgment, and urging caution in efforts to change legal rules prohibiting discrimination); Chad Derum &

Karen Engle, *The Rise of the Personal Animosity Presumption in Title VII and the Return to "No Cause" Employment*, 81 Tex. L. Rev. 1177 (2003) (critiquing *McDonnell Douglas* model).

The *McDonnell Douglas* framework is not perfect, but it remains the law of the land for handling cases without direct evidence of unlawful discrimination. It can be and has been adapted, as we have done in discriminatory discipline cases like this one. And we have often cautioned parties to avoid an unduly rigid barrier between direct and circumstantial evidence of discrimination, such as in our "convincing mosaic" line of cases. See, *e.g.*, *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009), quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994); see also *Dewitt v. Proctor Hospital*, 517 F.3d 944, 950-51 (7th Cir. 2008) (Posner, J., concurring) (explaining the mistake of treating direct and indirect methods of proof "as if each were in its own sealed compartment"). On the record here, summary judgment for the defendant must be and is AFFIRMED.