## In the

## United States Court of Appeals

### For the Seventh Circuit

No. 12-1703

DELORIA J. JOHNSON,

*Plaintiff-Appellant*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-04160—**William J. Hibbler**, *Judge*.

ARGUED OCTOBER 3, 2012—DECIDED NOVEMBER 9, 2012

Before FLAUM, RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Deloria Johnson, a 67-year-old African-American woman and a retired legal assistant at the United States Department of Justice, appeals from the grant of summary judgment against her in this employment-discrimination action. The district court concluded that Ms. Johnson had failed to establish a prima facie case of race, sex or age discrimination.

Because the district court properly concluded that
Ms. Johnson had failed to produce sufficient evidence
of unlawful discrimination, we must affirm the judg-
ment of the district court.

# I

## BACKGROUND

### A.  Facts

Deloria Johnson worked for sixteen years as a secretary
and legal assistant at the United States Attorney's Office
for the Northern District of Illinois until her voluntary
retirement in September 2007.

Just weeks before her retirement, Ms. Johnson had
a verbal altercation with another legal assistant, Beryl
Mosley. Ms. Johnson told Mosley that she wanted to
"throw up" upon hearing Mosley praise their supervisor,
Sharon Getty, for easing her workload in stressful times.
Mosely, upset and embarassed, went to Getty's office
to cry. Getty, recalling her conversation with Mosley in
her office, testified in her deposition that Mosley had
told her that Ms. Johnson used terms other than
"throw up," including "puke" and "puke in your face."

After meeting with Mosley, management eventu-
ally decided that the office would best be served by
Ms. Johnson's reassignment to another floor, rather than
by a formal reprimand. Accordingly, Ms. Johnson was
reassigned for 120 days to the eleventh-floor file room
where she was tasked with helping to index a large back-
log of closed cases.

Ms. Johnson's salary and benefits did not change. Her duties and some of the conditions under which she worked were altered. For example, she was generally restricted to the file room during business hours (aside from breaks), and she was not authorized to allow others into the file room or to work overtime. After an introductory period with lower expectations, Ms. Johnson was asked to index nine to ten files a day. She retired before her assignment expired.[1]

## B. District Court Proceedings

Ms. Johnson brought this action against the Department of Justice ("DOJ") for discrimination based on her age, sex and race. She attempted to prove unlawful discrimination under both the direct and indirect methods. With respect to the direct method, she asserted that the trier of fact could infer discriminatory intent from a "mosaic of evidence" comprised of the DOJ's arguably contradictory witness statements and from her assertions that similarly situated employees had received preferential

---

[1] Because we decide this case on other grounds, we need not determine whether these changes amounted to an adverse employment action. *See, e.g.*, *Vance v. Ball State Univ.*, 646 F.3d 461, 474-75 (7th Cir. 2011) (declining to consider whether changes to plaintiff's employment constituted a materially adverse employment action because "even if Vance had established that Ball State subjected her to a materially adverse action, her claim would fail because she has not satisfied the final element of the *prima facie* analysis").

treatment.[2] In her answer to an interrogatory, Ms. Johnson identified seven employees who, in her view, were similarly situated. These individuals included Carol Bithos, Ms. Johnson's white, female, former supervisor who "was reassigned from her supervisory position to indexing case files" but "never isolated to the file room, nor was she restricted to certain floors[,]"[3] and Mark Zavodny and Pat Ennis, two white men who worked with her in the eleventh-floor file room. In her answers, she noted that the two men often argued with one another, presumably without incurring any discipline. She further recalled one time when Ennis let his family visit him at work for fifteen minutes, although she was "not authorized to allow others in the file room."[4] Ms. Johnson's interrogatory answers concede that Getty, her supervisor, did not supervise Bithos, Zavodny or Ennis.

Proceeding under the indirect method, Ms. Johnson contended that she could make out a prima facie case of discrimination because she belonged to a protected class, had met her employer's legitimate expectations, suffered an adverse employment action when reassigned to the file room and was treated differently from the similarly situated employees identified in her interrogatory answers. She also argued that the DOJ's stated nondiscriminatory reason for her reassignment was

---

[2]  R.39-3 at 11.

[3]  R.33-1 at 9.

[4]  R.33-1 at 10.

"illegitimate" because the DOJ used a vague standard to discipline her on account of her age, race or sex.

The district court granted the DOJ's motion for summary judgment, concluding that Ms. Johnson had failed to establish the existence of a genuine issue of material fact under either the direct or indirect method. With respect to the direct method, the court held that Ms. Johnson had failed in her attempt to present a mosaic of circumstantial evidence because she had presented no evidence of her supervisors' prejudicial remarks or behavior, presented only a conclusory statement that she was treated differently than similarly situated employees and could not show discriminatory intent based merely on evidence that the reassignment was a disproportionate response to her comments to Mosely. The court noted that Ms. Johnson's answers to interrogatories contained "some reference to disparate treatment of coworkers," but the court disregarded that evidence because, in its view, "a party cannot use his own interrogatory answers to support or oppose summary judgment." *Johnson v. Holder*, 2012 WL 645933, at *3 (N.D. Ill. Feb. 27, 2012). The court also concluded that, even considering the employees Ms. Johnson had identified as similarly situated in her interrogatory answers, Ms. Johnson had failed to establish a prima facie case under the indirect method because she did not produce sufficient evidence that these employees were in fact similarly situated to her.

With respect to the indirect method, the court further concluded that Ms. Johnson's case failed because

she had not produced evidence of similarly situated employees.

## II

## DISCUSSION

Ms. Johnson first challenges the district court's conclusion that she did not present a sufficient mosaic of circumstantial evidence under the direct method of proof. She asserts that she was treated differently from similarly situated employees outside her protected class, specifically, Bithos, Zavodny and Ennis. The only evidence she produces in support of her position are identical allegations in her interrogatory answers and in her affidavit which, as discussed below, are insufficient to establish that the employees Ms. Johnson identified are similarly situated to her.

As a threshold matter, we note that, in discussing the admissibility of Ms. Johnson's interrogatory answers, the district court misapprehended the breadth of our holding in *Luster v. Illinois Department of Corrections*, 652 F.3d 726 (7th Cir. 2011), when it stated that Ms. Johnson could not use her own interrogatory answers to oppose summary judgment. The employee in *Luster* sought to show in his answer to an interrogatory that a coworker of another race had been punished for misconduct less severely than he had. *Id.* at 731. We stated there that the employee could not use his own interrogatory answer to oppose summary judgment because the answer was not based upon personal knowledge

or otherwise admissible. *Id.* n.2 (citing Fed. R. Civ. P. 56(c)(4)). The employee in *Luster* did not "supply an admissible foundation from which to conclude" that his assertions were based on personal knowledge; his interrogatory answer was thus insufficient to avoid summary judgment. *Id.* In *Luster*, we simply held, therefore, that evidence offered to support or oppose summary judgment must be admissible at trial, and affidavits and declarations must be made with personal knowledge. *Id.*

Under Federal Rule of Civil Procedure 56(c), a district court "may consider answers to interrogatories when reviewing a motion for summary judgment so long as the content of those interrogatories would be admissible at trial." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008). Simply stated, a person answering an interrogatory can testify competently at trial to the information contained in her answers so long as she has personal knowledge of such information. Much of Ms. Johnson's interrogatory answers concerning proposed similarly situated employees contain hearsay, and the district court was correct in refusing to consider these answers. The district court should have considered, however, the non-hearsay statements contained in Ms. Johnson's interrogatory answers. Some of Ms. Johnson's interrogatory answers incorporated her own observations. For example, in one interrogatory answer, Ms. Johnson addresses the reassignment of her own supervisor to indexing duties. In another she recounts verbal fights she observed between two of the

men who worked in the file room. In a third answer, Ms. Johnson describes an incident when one of the men who worked in the file room, Ennis, allowed his family to visit him in the file room during office hours. Because some of Ms. Johnson's interrogatory answers contained admissible evidence, the district court should have considered them in determining whether summary judgment was proper.

This misapprehension of the holding in *Luster*, however, is harmless. Even considering Ms. Johnson's non-hearsay interrogatory answers, she nevertheless failed to provide sufficient evidence of a similarly situated employee. Ms. Johnson has not produced facts demonstrating that Bithos or the men in the file room shared a similar record of misconduct, performance, qualifications or disciplining supervisors such that their different treatment reflects a discriminatory intent on the part of the DOJ. *See Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012) (holding that the plaintiff failed to identify a similarly situated employee because his comparators had not "violated standard operating procedures, disobeyed direct orders, or show[n] a lack of commitment to the job during their probationary periods" as the plaintiff had). For instance, Ms. Johnson does not contend that either Bithos or the men in the file room made inappropriate comments to coworkers. Nor does she suggest that Bithos or the file-room men shared her job description or supervisor. "[W]hen uneven discipline is the basis for a claim of discrimination, the most-relevant similarities are those between the em-

ployees' alleged misconduct, performance standards, and disciplining supervisor." *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011). Bithos was a supervisor, not a legal assistant like Ms. Johnson, and the record is silent on the file-room men beyond stating their race and sex. The record contains no information with respect to any of the other individuals.

Ms. Johnson also challenges the district court's conclusion that she cannot show discrimination under the indirect method. Ms. Johnson asserts generally that she was treated differently from similarly situated co-workers. For the reasons that we have just discussed, she has not established that she was treated less favorably than any similarly situated employee. Because of this failure, she cannot make out a prima facie case of discrimination, which is required under the indirect method. *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 678 (7th Cir. 2012).

Ms. Johnson also alleges that DOJ's stated non-discriminatory reason for its assignment of Ms. Johnson to the file room is pretextual. Because she has failed to establish a prima facie case of discrimination, we need not reach the issue of pretext. Under the indirect method, unless Ms. Johnson established a prima facie case of discrimination, summary judgment was proper, and the DOJ was not required to offer a legitimate non-discriminatory reason for its actions.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED