NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 5, 2013[*]
Decided April 8, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-3913

| | |
|---|---|
| LARRY V. HALL, JR., *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11 C 5283 |
| VILLAGE OF FLOSSMOOR, ILLINOIS, *Defendant-Appellee.* | John Z. Lee, *Judge*. |

**O R D E R**

Larry Hall was fired from his job as a police officer in the Village of Flossmoor, Illinois, after having sex in a patrol car while on duty and then lying to superiors about the encounters. Hall is African American and claims in this employment-discrimination suit

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

that the Village punished him more harshly than white officers caught engaging in misconduct. The district court granted summary judgment for the Village. We affirm.

Except as noted the evidence submitted at summary judgment is undisputed. Hall joined the police force in 2004 and before this case had been disciplined only once, when he received a verbal warning for sleeping on duty. Hall performed standard patrol duties but, at times, also served as an acting supervisor and worked in the police department's tactical and juvenile units. In 2008 he applied to work as a "field training officer," for which he would have been paid extra to train a new officer. One of several white applicants was chosen for that role.

Hall also was a "liaison officer" at the local high school, and in that role he provided security during the school day. He began socializing with a female student, and in the summer of 2007, shortly after she graduated, the two began a sporadic affair that lasted two years. The young woman's father discovered the affair and complained to Hall's superiors in 2009. The police department investigated and concluded that Hall, who was married and in his 30s, did not have sex with the woman until she had turned 18 and was out of school. Still, multiple witnesses—including the woman—reported that the two had sex in a police vehicle while Hall was on duty. Investigators also discovered that Hall had used the department's computer system to send vulgar and disrespectful instant messages to coworkers. He referred to a sergeant named Clint as "clintoris," reported that another officer had been under the police chief's desk making "gargling" sounds, and called Village residents "Flossmorons." Department policy limits use of instant-messaging terminals to police business and prohibits misusing the system in a "manner that would tend to discredit" the department.

Hall was questioned during the investigation. He admitted having sex with the former student and also sending inappropriate instant messages. But more than a dozen times during the interview, he denied having sex in a police vehicle or while on duty. Before the questioning ended, however, Hall finally confessed that he and the woman twice had sex in a police vehicle in Flossmoor while he was on duty. At the time he insisted that he did not remember getting any calls from the dispatcher while they were having sex. But months later Hall would admit, both to the Equal Employment Opportunity Commission and during a discovery deposition, that he once answered an emergency call while having sex and was forced to detour and drop the former student at her car.

The police chief, William Miller, jointly concluded with the Village manager that Hall should be fired. In a November 2009 letter to Hall explaining the decision, Miller concluded that he had engaged in unbecoming conduct, neglect of duty, insubordination, and misuse of the instant-messaging system. Miller also said that Hall had violated

department rules requiring officers to truthfully answer questions relating to their duties, to remain on the beat unless called away for a police purpose, and to utilize department equipment only for its intended use. Hall unsuccessfully challenged his dismissal through arbitration.

Hall was not alone, however, in breaking department rules. Two white officers, Doug Heward and Brian Brosnan, once drove to another town about 20 miles away from Flossmoor to move a generator in Heward's home. At the time they were the only officers on duty, and when they received a domestic-violence call, Heward and Brosnan had to speed back to Flossmoor using their emergency lights and sirens. The department suspended Heward for 10 days and issued a written warning to Brosnan.

Hall was represented by counsel when he sued the Village in August 2011 claiming that he was denied promotion to "field training officer" and later fired because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. (Hall's complaint also includes claims under 42 U.S.C. § 1981 and § 1983. The substantive standards governing Title VII apply equally to these provisions. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007); *Davis v. Wisc. Dep't of Corr.*, 445 F.3d 971, 976 (7th Cir. 2006)**.**) At summary judgment Hall proceeded under the indirect method of proof, *see McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973), but in opposing the Village's motion he relied entirely on his own deposition, his narrative offered in support of his administrative charge of discrimination, and the complaint. A number of the factual assertions in Hall's submission refer to irrelevant pages in his deposition or cite the 10-page, single-spaced narrative without identifying specific pages or lines. The district court thus deemed much of the Village's statement of facts to be admitted and also refused to consider some of Hall's additional factual contentions. *See* N.D. ILL. R. 56.1(b)(3).

The district court concluded that the claims for failure to promote were untimely, and that Hall had failed to make out a prima facie case of discrimination in the Village's decision to fire him. Hall did not dispute the Village's evidence that he had committed serious rule violations by having sex in a police vehicle and then lying about it. Therefore, the court reasoned, he could not establish that he was meeting the Village's legitimate employment expectations (or, for the same reason, show that the Village's explanation for firing him was pretextual). The court added that Hall lacked admissible evidence of similarly situated employees who were treated more favorably. Hall had asserted that eleven officers who are not African American were retained after engaging in comparable misconduct, but his lawyer cited no admissible evidence concerning eight of them, and the court rejected the others as valid comparators. Those three, the court reasoned, did not have sex in a department-owned vehicle and then lie about it.

Now pro se, Hall challenges the grant of summary judgment for the Village but relies principally on a lengthy appendix filled with documents not discussed or, for some, even presented in the district court. These submissions have come too late to help Hall's case, since our review is limited to the evidence properly before the district court. *See, e.g., Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 596 (7th Cir. 2012); *Hernandez v. HCH Miller Park Joint Venture*, 418 F.3d 732, 736 (7th Cir. 2005). The district court properly exercised its considerable discretion in enforcing Local Rule 56.1, *see, e.g., Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004), and Hall does not contend otherwise. Instead he approaches this appeal as if he was still litigating the Village's motion for summary judgment in the district court. But Hall acknowledges that his lawyer bypassed an ample opportunity to present all available evidence to the district court at summary judgment; Hall does not get a chance for a do-over in the court of appeals. *See Garrison v. Burke*, 165 F.3d 565, 567 & n.2 (7th Cir. 1999). Accordingly, we have disregarded Hall's additional submissions and the bulk of his brief discussing factual contentions not supported by the evidence before the district court.

Once we cull the improper factual references from Hall's appellate brief, the grant of summary judgment for the Village is readily sustained. In analyzing Hall's discharge from the police force, the district court focused on whether a jury could find from the admissible evidence that Hall was meeting the Village's legitimate employment expectations but was treated less favorably than similarly situated police officers who are not African American. *See McDonnell Douglas*, 411 U.S. at 802; *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). These two elements of *McDonnell Douglas* essentially merge in cases like this one, because when the plaintiff acknowledges breaking his employer's rules but contends that he was disciplined more harshly than other rule-breakers, the relevant inquiry is whether employees outside of the plaintiff's protected class participated in similar misconduct but received less punishment. *See Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011); *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011); *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 594 (7th Cir. 2010). Employers cannot define their expectations according to unlawful criteria, and thus even imperfect employees who break rules may have a claim for employment discrimination if their employer disciplines troublemakers inconsistently. *See Luster*, 652 F.3d at 730. Important considerations are whether comparators engaged in misconduct of "comparable seriousness," and whether "differentiating or mitigating circumstances" distinguish them from the plaintiff. *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688–89 (7th Cir. 2007).

The district court concluded that Hall did not identify another officer who engaged in similar misconduct but received less punishment. We agree with that bottom line, though not entirely with the court's reasoning. The court placed great emphasis on the fact that Hall

is the only officer known to have had sex in a police vehicle while on duty and then lie about it. But "complete identity" with a comparator is not essential; a plaintiff simply needs evidence that a coworker's misconduct was similar enough to infer that the uneven punishments resulted from racial bias. *Luster*, 652 F.3d at 730; *see also Coleman*, 667 F.3d at 846–47. That Hall's actions were unprecedented cannot doom his prima facie case if other officers engaged in comparably serious misconduct.

And that brings us back to Hall's presentation in the district court. In opposing the Village's motion for summary judgment, Hall accused a number of fellow officers of engaging in misconduct that administrators tolerated or punished only lightly, but most of his finger pointing was not based on personal knowledge or admissible evidence and thus could not establish a triable issue. *See Luster*, 652 F.3d at 731 & n.2; *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939–40 (7th Cir. 2003). Hall's admissible evidence relates only to three officers, one of whom is irrelevant because his misconduct—engaging in an improper vehicle pursuit that caused a car accident—is not remotely similar to Hall's wrongdoing. The other two comparators, Heward and Brosnan, are a closer match. They abandoned their duties and after driving more than 20 miles from Flossmoor received an emergency call requiring them to speed back to the Village, emergency lights ablaze and sirens wailing. Like Hall, they used a police vehicle to attend to personal business while on duty and, as a result, were unprepared to respond to an emergency call.

Hall's problem, however, is that aggravating circumstances distinguish his misconduct from that of Heward and Brosnan. Unlike them, Hall used the instant-messaging system to send vulgar and disrespectful messages, and, more importantly, he lied repeatedly during an official investigation of his conduct. Hall's dishonesty was a primary reason the Village offered for firing him. Chief Miller's letter explaining Hall's dismissal emphasizes that he "lacked candor and credibility" during the investigation, and during the arbitration Miller similarly testified that he decided to fire Hall in part because he was "far less than truthful" when interviewed. Hall's interview was scheduled in advance, and he knew the inquiry would focus on the former student, yet he still lied more than a dozen times about having sex in a police vehicle while on duty.

Hall insists on appeal that Heward also lied about his misconduct, but there is no competent evidence supporting this contention. At his deposition Hall testified that he had *heard* from others that Heward had lied, but this inadmissible hearsay cannot defeat a motion for summary judgment. *See Luster*, 652 F.3d at 731 & n.2; *Adams*, 324 F.3d at 939–40. Moreover, Hall did not direct the district court to this portion of the deposition transcript, so the court was not required to (and did not) consider it. *See* N.D. ILL. R. 56.1(b)(3)(C); *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005). Because Hall's dishonesty is a significant aggravating circumstance, Hall is not similarly situated to Heward and Brosnan.

*See Antonetti v. Abbott Labs.*, 563 F.3d 587, 592 & n.5 (7th Cir. 2009) (plaintiffs who lied about taking unauthorized breaks not similarly situated to fellow employee who did not lie about his conduct); *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690–91 & n.7 (7th Cir. 2008) (employees not similarly situated where plaintiff engaged in more misconduct, including dishonesty, than purported comparators); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 920 (7th Cir. 2001) (employees not similarly situated where would-be comparator committed only one of the three offenses for which plaintiff was fired). Thus Hall did not present a prima facie case of discrimination related to his discharge.

Hall also argues that the district court erred in granting summary judgment on his claims that the Village discriminated against him by failing to promote him to a field training officer position. Hall was turned down for that assignment in 2008; he filed his EEOC charge in 2010 and his complaint in 2011. Those submissions, the district court reasoned, were untimely. The court was correct about the Title VII claim, *see* 42 U.S.C. § 2000e-5(e)(1), and the § 1983 claim, *see Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005), but wrong about the § 1981 claim. The § 1981 claim has a four-year statute of limitations, so it was timely. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 382 (2004); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 269 (7th Cir. 2004). But its dismissal must be sustained because Hall offered no evidence from which a jury could conclude that the Village had a policy or custom of discriminatory promotions among its police officers. *See Monell v. New York Dep't of Social Services*, 436 U.S. 658, 694 (1978); *Smith v. Chicago Sch. Reform Bd. of Trustees*, 165 F.3d 1142, 1148–49 (7th Cir. 1999) (holding that *Monell* applies to § 1981 suits).

We have reviewed Hall's other arguments and conclude that none has merit. Accordingly, we AFFIRM the judgment of the district court.