NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted, May 30, 2013[*]
Decided June 3, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-3849

| | |
|---|---|
| TORRENCE S. WILLIAMS, <br>     *Plaintiff-Appellant,* <br><br>     *v.* <br><br> PATRICK R. DONAHOE, Postmaster General of the United States Postal Service, <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 11 C 2477 <br><br> Ronald A. Guzmán, <br> *Judge.* |

**O R D E R**

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Torrence Williams alleges that the United States Postal Service denied him a promotion because he is African American and then fired him when he protested this discrimination. He sued under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). The district court granted summary judgment for the defendant, and Williams appeals. We affirm the judgment.

Williams worked as a "custodial laborer" from 2005 to 2010 at the O'Hare Airport Mail Center in Chicago. He was a member of the "maintenance craft" of his union and principally performed janitorial tasks. In January 2010 the Postal Service advertized three openings for data collection technicians. The Service invited written applications from full-time employees in the "clerk craft." Applicants had to describe their education and work history, supply references, and explain how they satisfied 10 specific job criteria. Although not in the clerk craft, Williams was told that he could compete for the jobs. He submitted an application, but his list of references included only names (and sometimes no surname) without any contact information. Valitta Hunter and Mamie Averhart selected 2 of the 14 applicants to interview. Those two, Edward Sanchez and Noel Garcia, who are Hispanic, were hired in February; the third position was not filled.

Williams viewed the promotion of two Hispanics as discriminatory. He first complained to an internal counselor in March 2010 and afterward submitted a formal charge of discrimination. *See* 29 C.F.R. § 1614.105–06. Eventually an administrative law judge dismissed that charge, *see id.* § 1614.109, but in the meantime the Postal Service decided to shutter the O'Hare facility. Williams and other custodial laborers were told in June 2010 that, based on their collective bargaining agreement, reassignments to other facilities would be based on seniority.

Williams requested a reassignment near Chicago, but those positions were filled by employees with higher seniority. About five months after he complained of discrimination, the Postal Service reassigned Williams to a facility in Kansas City, Missouri. That news prompted him to write to the Postal Service, warning that he would not relocate because the reassignments, he asserted, discriminated against veterans. Williams failed to show up in Kansas City on September 11, when he was scheduled. Three weeks later the Postal Service warned Williams that he could be fired if his unauthorized absence continued. Williams wrote again, this time stating that "Effective October 10, 2010; I cannot/will not accept the <u>involuntary</u> reassignment" to Kansas City. The Postal Service deemed this a resignation and ended his employment early in 2011.

Williams sued, advancing two claims. He alleged that the Postal Service did not promote him to data collection technician because of his race, and it then retaliated for his charge of discrimination by reassigning him to Kansas City, leading to a constructive

discharge. In moving for summary judgment, the Postal Service argued that under the indirect method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), Williams could not establish a prima facie case of race discrimination. The undisputed evidence, it argued, showed that he was not as well qualified for the technician jobs as Garcia and Sanchez, and he was not treated less favorably than a non-black, similarly situated applicant: Hunter and Averhart attested that they promoted Garcia and Sanchez over Williams because of their superior, relevant experience, and unlike them, Williams submitted incomplete applications and had a history of poor attendance and disobedience. The Postal Service argued that the retaliation claim was baseless because the Service reassigned the custodial laborers based on seniority, as required by the collective bargaining agreement.

Williams responded that both of his claims should be tried. For his discrimination claim, Williams opined that he was qualified to be a data collection technician, but conceded that Garcia and Sanchez had more relevant experience, that he had no evidence that race motivated the promotion decision, and that among the three, he alone had been disciplined. Williams insisted, however, that Garcia was a not a member of the union's bargaining unit when he applied and thus was ineligible for the position. He speculated that two Hispanics were chosen because the supervisor who oversaw the selection process is Hispanic. For his retaliation claim, Williams argued that the "seniority"-based rationale for reassignments was a lie. He asserted that several Postal Service employees who had been involved in reassigning him to Kansas City knew about his discrimination charge and improperly used a "maintenance seniority system" rather than the "standard occupational group seniority" system mandated by his collective bargaining agreement. By using the wrong system, the Postal Service incorrectly designated two employees as senior to him.

The district court ruled for the Postal Service. It reasoned that a finder of fact could not reasonably find that the Postal Service racially discriminated against Williams in not promoting him. The court also rejected the retaliation claim because, if the Postal Service used the wrong seniority system, it applied the same system to everyone equally, thereby refuting retaliatory intent.

On appeal Williams argues that both of his claims should have survived summary judgment, but he identifies no admissible evidence suggesting that the Postal Service believed that its reasons for not promoting him (insufficient qualifications) and transferring him to Kansas City (insufficient seniority) were false. Instead, he maintains that he was qualified to work as a data collection technician, citing his own opinion and his college transcripts, which show several courses in economics and statistics. The issue, though, is whether a finder of fact reasonably could conclude that Hunter and Averhart did not believe, when they selected Garcia and Sanchez, that those two were better qualified than Williams. *See Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 739 (7th Cir. 2006); *Cichon v.*

*Exelon Generation Co.,* 401 F.3d 803, 813 (7th Cir. 2005). Williams conceded that he lacked evidence suggesting that (1) the two women were lying when they explained their race-neutral reasons for selecting Garcia and Sanchez or (2) race played a role in the selection process. Those concessions defeat his speculations about race bias and doom his discrimination claim. *See Adelman-Reyes v. Saint Xavier Univ.,* 500 F.3d 662, 666–67 (7th Cir. 2007); *Hudson v. Chi. Transit Auth.,* 375 F.3d 552, 562 (7th Cir. 2004).

Equally unfounded is Williams's claim of retaliation. He argues that the claim should survive summary judgment under either the direct or indirect methods of proof. For both methods, he argues that the Service reassigned him using the wrong seniority system, so its neutral explanation of relying on seniority is pretextual. But Williams submitted no admissible evidence that the Postal Service used the "wrong" system to designate Williams's seniority. He offered his own interpretation of the collective bargaining agreement, but that is insufficient to create a genuine dispute of fact for trial. *See Majors v. Gen. Electric Co.,* No. 12-2893, 2013 WL 1592072, at *9–10 (7th Cir. Apr. 16, 2013). He also offered an affidavit from Robert Nalaski, a former union official who left the union 13 years ago. Even if the opinion of a union official involved in negotiating or interpreting the contract were admissible, Nalaski was not associated with the union when the contract was negotiated 7 years after his departure or when the Postal Service made the involuntary reassignments. Because he does not have any personal experience observing how the contract has been applied at the O'Hare facility, his affidavit cannot assist Williams in avoiding summary judgment. *See Luster v. Ill. Dept. of Corr.,* 652 F.3d 726, 731 (7th Cir. 2011). Finally, in any event, even if the Postal Service used the wrong seniority system, Williams has submitted no evidence that the Service knew the system was wrong. Absent evidence that the Postal Service did not sincerely believe that it was using the correct seniority system for the reassignments, the contention that the seniority rationale was pretextual is unsubstantiated. *See Silverman v. Bd. of Educ. of City of Chicago,* 637 F.3d 729, 744 (7th Cir. 2011); *McCoy v. Maytag Corp.,* 495 F.3d 515, 522–24 (7th Cir. 2007).

**AFFIRMED**.